1  John P. Kristensen (SBN 224132)
2  **KRISTENSEN LAW GROUP**
3  120 Santa Barbara St., Suite C9
   Santa Barbara, California 93101
4  Telephone: (805) 837-2000
5  *john@kristensen.law*

6  Leigh S. Montgomery*
7  Texas Bar No. 24052214
   **EKSM, LLP**
8  1105 Milford Street
9  Houston, Texas 77006
   Phone: (888) 350-3931
10 *lmontgomery@eksm.com*

11 **ATTORNEYS FOR PLAINTIFF**
12 (* denotes *pro hac vice* forthcoming)

13
14 **THE UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

15
16 MYRIAM HERNANDEZ,                   ) Case No.: 2:24-cv-9434
   individually and on behalf of all    )
17 others similarly situated,           ) **CLASS ACTION**
                                        )
18                        Plaintiffs,   ) **COMPLAINT FOR DAMAGES**
19             vs.                      )
                                        ) **1.  Negligence;**
20 F19 COMPLIANCE, LLC F/K/A            ) **2.  Invasion of Privacy;**
21 FORM I-9 COMPLIANCE LLC, a           ) **3.  Unjust Enrichment;**
   California Limited Liability         ) **4.  Breach of Implied Contract;**
22 Company, inclusive,                  ) **5.  Violation of Cal. *Bus. & Prof. Code***
                                        )     ***§§ 17200, et seq.*; and**
23                        Defendants.   ) **6.  Breach of California Security**
24                                      )     **Notification Law – Cal. *Civ. Code* §**
                                        )     **1798.82**
25                                      )
26                                      )
27                                      )
28                                      )
                                        ) **DEMAND FOR JURY TRIAL**

**PLAINTIFF'S COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**– 1 –**

1    Plaintiff Myriam Hernandez ("Plaintiff" or "Hernandez") brings this Class
2    Action Complaint against LA Financial Federal Credit Union FI9 Compliance,
3    LLC f/k/a Form I-9 Compliance, LLC ("FI9" or "Defendant"), on behalf of herself
4    individually and on behalf of all others similarly situated ("Class Members"), and
5    alleges, upon information and belief, based upon investigation of counsel,
6    published reports, and personal knowledge:

7    **I.    NATURE OF THE ACTION**

8        1.    Plaintiff brings this class action against Defendant for its failure to
9    properly secure and safeguard personally identifiable information ("Private
10   Information") belonging to Plaintiff and other current and former customers of
11   Defendant's clients, the putative Class Members.

12       2.    FI9 is a compliance consulting company in Southern California that
13   acquired, utilized, and stored Plaintiff's and Class Members Private Information.

14       3.    Defendant was subject to a cyberattack on or around February 5, 2024,
15   and April 12, 2024 (the "Data Breach"). Defendant investigated the Data Breach
16   and determined that an unauthorized party gained access to Defendant's computer
17   network and acquired files containing the Private Information of Plaintiff and other
18   current and former customers of Defendant's clients.

19       4.    On October 11, 2024, Defendant mailed Plaintiff a "Notice of Data
20   Breach" advising her that the data exposed in the Data Breach included Plaintiff's
21   "first and last name Social Security Number." Notice of Data Breach, Exhibit A
22   hereto.

23       5.    Plaintiff brings this class action lawsuit on behalf of herself and those
24   similarly situated to address Defendant's inadequate safeguarding of Class
25   Members' Personal Information that it collected and maintained, and for failing to
26   provide adequate notice to Plaintiff and other Class Members that their information
27   was likely accessed by an unknown third party and precisely what type of
28   information was accessed.

---

**PLAINTIFF'S COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

6.    Defendant maintained the Private Information in a reckless and negligent manner. In particular, the Private Information was maintained on Defendant's computer system and network in a condition vulnerable to cyberattack. Upon information and belief, the mechanism of the Data Breach and potential for improper disclosure of Plaintiff's and Class Members' Personal Information was a known risk to Defendant and thus Defendant was on notice that failing to take steps necessary to secure the Personal Information from those risks left that information in a dangerous condition.

7.    Because of the Data Breach, Plaintiff and Class Members suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack and the substantial and imminent risk of identity theft.

8.    By obtaining, collecting, using, and profiting from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant admits that the unencrypted Private Information was impacted during the Data Breach.

9.    The exposed Private Information of Plaintiff and Class Members can—and likely will—be sold on the dark web. Indeed, Plaintiff's and Class Members' Private Information has likely already been published on the dark web.

10.   Hackers can offer for sale the unencrypted, unredacted Private Information to criminals. Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers—the gold standard for identity thieves.

11.   This Private Information was compromised because of Defendant's negligent and/or careless acts and omissions and the failure to protect the Private Information of Plaintiff and Class Members.

12.    Plaintiff and Class Members had no idea their Private Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their lifetimes.

13.    Plaintiff brings this action on behalf of all persons whose Private Information was compromised because of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

14.    Plaintiff and Class Members have suffered injuries because of Defendant's conduct. These injuries include:

(i)    lost or diminished value of Private Information;

(ii)    out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

(iii)    lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including, but not limited to, lost time; and

(iv)    the continued and exacerbated risk to their Private Information which:

a.  remains unencrypted and available for unauthorized third parties to access and abuse; and

b.  may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

15.    Defendant disregarded the rights of Plaintiff and Class Members by

1  intentionally, willfully, recklessly, and/or negligently failing to take and implement

2  adequate and reasonable measures to ensure that the Private Information of Plaintiff

3  and Class Members was safeguarded. Defendant further disregarded their rights by

4  failing to take available steps to prevent an unauthorized disclosure of data, and

5  failing to follow applicable, required, and appropriate protocols, policies, and

6  procedures for the encryption of data, even for internal use.

7      16.    Because of the Data Breach, the Private Information of Plaintiff and

8  Class Members was compromised through disclosure to an unknown and

9  unauthorized third party. Plaintiff and Class Members have a continuing interest in

10  ensuring that their information is and remains safe, and they should be entitled to

11  injunctive and other equitable relief.

## II.   PARTIES

13      17.    Plaintiff Myriam Hernandez is a Citizen of Valley City, Utah. He

14  received notice from Defendant that it lost control of his PII.

15      18.    Defendant FI9 is a limited liability company formed under the laws of

16  California and having its principal place of business at 1200 Newport Center Drive

17  #250, Newport Beach, CA 92660. Defendant's registered agent is John H.

18  Hermann, located at 24 Corporate Plaza 100 Newport Beach, California 92660.

## III.   VENUE AND JURISDICTION

20      19.    This Court has jurisdiction over the subject matter of this action under

21  28 U.S.C. §1332(d) because this is a class action wherein the amount controversy

22  exceeds the value of $5 million, exclusive of interest and costs, there are more than

23  100 members in the proposed Class,[1] and at least one Class Member is a citizen of

24  a state that is different from Defendant to establish minimal diversity.[2]

---

[1] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/5199a89f-3500-4f2c-8883-2d01de4bc78c.html (reporting over 96,000 affected, including 58 Maine residents)(last viewed October 31, 2024).

[2] *Id.; see also* https://justice.oregon.gov/consumer/databreach/ (notifying citizens of Oregon of the data breach)(last viewed October 31, 2024).

KRISTENSEN
LAW GROUP

20.    This Court has general personal jurisdiction over Defendant, because Defendant has its principal place of business ("nerve center") in Orange County.

21.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is further proper in this Court because the principal acts and omissions were committed in Orange Angeles County.

## IV.    ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### (Against All Defendants)

### A.    DEFENDANT'S BUSINESS

22.    Defendant is a California-based company that provides to companies to file I-9 Forms for employment eligibility verification.

23.    In the ordinary course of completed an I-9 Form, clients provided Defendant with sensitive, personal, and private information, such as his or her:

- address;
- telephone number;
- date of birth;
- Social Security number;
- Employee email information.

24.    Defendant agreed to and undertook legal duties to maintain the Private Information entrusted to them by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws.

25.    The customer information held by Defendant in its computer system and network included the Private Information of Plaintiff and Class Members.

### B.    THE DATA BREACH

26.    In the ordinary course of providing tech solutions and consulting services to its clients, FI9 obtained a variety of sensitive, personal and private information regarding its clients' current and former customers, including Plaintiff

and Class Members.

27.    Upon information and belief, in the course of collecting Private Information from its clients' employees, Defendant promised to provide confidentiality and adequate security for the data it collected regarding its clients' customers.

28.    A Data Breach occurs when cyber criminals intend to access and steal Private Information that has not been adequately secured by a business entity like Defendant.

29.    Defendant had obligations created by contract, industry standards, common law, and representations made to its clients and to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

30.    Defendant agreed to and undertook legal duties to maintain the protected Private Information entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws.

31.    By obtaining, collecting, and using Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

32.    Plaintiff and Class Members provided their Private Information to Defendant or to Defendant's clients with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

33.    In 2023, a record 3,205 data breaches occurred, resulting in around 353,027,892 individuals' information being compromised, a 78% increase from

2022.[3] Of the 2023 recorded data breaches, 809 of them, or 25%, were in the medical or healthcare industry.[4] The 809 breaches reported in 2023 exposed nearly 56 million sensitive records, compared to only 343 breaches that exposed just over 28 million sensitive records in 2022.[5]

34.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

35.    The "Notice of Data Event" posted to Defendant's website describes the Data Breach as follows:

> **What Happened?** On or about February 5, 2024, an unauthorized third party obtained access to a portion of Form I-9's network. On April 12, 2024, we became aware of the unauthorized activity and promptly took a portion of our network offline, activated our response process, and launched an investigation of the incident with the support of external cybersecurity experts. We also reported the incident to law enforcement.

> **What Information was Affected?** Our investigation determined that some of your personal information was affected by this incident. This information included your name, date of birth, and Social Security number.

36.    Defendant notified the California Attorney General on October 11, 2024, about six months after Defendant became aware of the Data Breach.

---

[3] *See* Identity Theft Resource Center, *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last visited October 31, 2024).
[4] *Id.*
[5] *Id.* at 11, Fig.3.

37.     Defendant notified Plaintiff of the Data Breach on October 11, 2024, more than six months after Defendant became aware of the Data Breach.

38.     As a consequence of the unauthorized access to Defendant's computer network, Plaintiff's and Class Members' Private Information was exposed to cybercriminals.

39.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

40.     Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for its intended purposes only, and to make only authorized disclosure of this Private Information.

41.     Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential information, including their Private Information, which includes Social Security numbers, information that is static, does not change, and can be used to commit myriad financial crimes.

42.     Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties.

43.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, causing the exposure of Private Information.

44.     Because of Defendant's failure to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, an unauthorized third party infiltrated Defendant's systems and stole Plaintiff's and Class Members' Private Information.

45.     The unencrypted Private Information of Plaintiff and Class Members will likely end up for sale on the dark web, as that is the *modus operandi* of hackers.

1  In addition, unencrypted Private Information may fall into the hands of companies
2  that will use the detailed Private Information for targeted marketing without the
3  approval of Plaintiff and Class Members. In turn, unauthorized individuals can
4  easily access the Private Information of Plaintiff and Class Members.

5  **C.    PLAINTIFF'S EXPERIENCE**

6      46.    Plaintiff received a notice from Defendant on or around October 11,
7  2024, that her Private Information was accessed in the Data Breach. Notice of Data
8  Breach, Exhibit A.

9      47.    Plaintiff is careful about sharing her sensitive Private Information.
10 Plaintiff has never knowingly transmitted unencrypted sensitive Private
11 Information over the internet or any other unsecured source.

12     48.    Plaintiff stores any documents containing her sensitive Private
13 Information in a safe and secure location or destroys the documents. Moreover,
14 Plaintiff diligently chooses unique usernames and passwords for her sensitive
15 online accounts.

16     49.    Because of the Data Breach, Defendant advised Plaintiff to take
17 certain steps to protect her Private Information and otherwise mitigate her damages.

18     50.    Because of the Data Breach, Plaintiff spent time dealing with the
19 consequences of the Data Breach, which includes time spent verifying the
20 legitimacy of the Notice of Data Breach and self-monitoring her accounts to ensure
21 no fraudulent activity has occurred. This time has been lost forever and cannot be
22 recaptured. And this time was spent at Defendant's direction by way of the Data
23 Breach notice where Defendant recommended that Plaintiff mitigate her damages
24 by, among other things, monitoring her accounts for fraudulent activity.

25     51.    Even with the best response, the harm caused to Plaintiff cannot be
26 undone.

27     52.    Plaintiff suffered actual injury in the form of damages to and
28 diminution in the value of Plaintiff's Private Information—a form of intangible

property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach. Plaintiff suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

53.    Plaintiff has suffered imminent and impending injury arising from the exacerbated risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

54.    Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

**D.    DEFENDANT FAILED TO COMPLY WITH FTC GUIDELINES**

55.    The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should shape all business decision-making.

56.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[6] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of

---

[6] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), *available at* www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited October 10, 2024).

KRISTENSEN
LAW GROUP

1    data being transmitted from the system; and have a response plan ready in the event

2    of a breach.[7]

3        57.    The FTC further recommends that companies not maintain PII longer

4    than is needed for authorization of a transaction; limit access to sensitive data;

5    require complex passwords to be used on networks; use industry-tested methods

6    for security; monitor for suspicious activity on the network; and verify that third-

7    party service providers have implemented reasonable security measures.

8        58.    The FTC has brought enforcement actions against businesses for

9    failing to adequately and reasonably protect client data, treating the failure to

10   employ reasonable and appropriate measures to protect against unauthorized access

11   to confidential consumer data as an unfair act or practice prohibited by Section 5 of

12   the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting

13   from these actions also clarify the measures businesses must take to meet their data

14   security obligations.

15       59.    Defendant failed to properly implement basic data security practices.

16   Defendant's failure to employ reasonable and appropriate measures to protect

17   against unauthorized access to customers' PII constitutes an unfair act or practice

18   prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

19       60.    Defendant was always fully aware of its obligation to protect the PII

20   of its customers. Defendant was also aware of the significant repercussions that

21   would result from its failure to do so.

22   **E.    DEFENDANT FAILED TO COMPLY WITH INDUSTRY STANDARDS**

23       61.    As shown above, large employers are widely known to be particularly

24   vulnerable to cyberattacks because of the value of the PII which they collect and

25   maintain.

26       62.    Several best practices have been identified that at a minimum should

27   be implemented by employers like Defendant, including, but not limited to,

28   _____

[7] *Id.*

educating all; strong passwords; multi-layer security, including firewalls, antivirus, and antimalware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

63. Other best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

64. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including, without limitation, PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

65. These foregoing frameworks are existing and applicable industry standards for any business that handles and stores large volumes of sensitive information, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

## F. DEFENDANT'S BREACH OF DUTY

66. Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and its data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.    Failing to adequately protect customers' Private Information;

c.    Failing to properly monitor its own data security systems for existing intrusions;

d.    Failing to train employees in the proper handling of emails containing how the cyberattackers were able to first access Defendant's networks, and to and maintain adequate email security practices;

e.    Failing to put into place proper procedures, software settings, and data security software protections to adequately protect against a blunt force intrusion;

f.    Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act; and

g.    Failing to adhere to industry standards for cybersecurity.

67.    As the result of computer systems needing security upgrading, inadequate procedures for handling emails containing ransomware or other malignant computer code, and inadequately trained employees who opened files containing the ransomware virus, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

68.    Accordingly, as outlined below, Plaintiff and Class Members now face an increased risk of fraud and identity theft.

**G.    BECAUSE OF DEFENDANT'S FAILURE TO SAFEGUARD PRIVATE INFORMATION, PLAINTIFF AND THE CLASS MEMBERS HAVE AND WILL EXPERIENCE SUBSTANTIAL HARM IN THE FORM OF RISK OF CONTINUED IDENTITY THEFT.**

69.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

70.    The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, account number, Social Security

number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes. According to experts, one out of four data breach notification recipients become a victim of identity fraud.

71.    Because of Defendant's failures to prevent—and to timely detect—the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.    The loss of the opportunity to control how their Private Information is used;

b.    The diminution in value of their Private Information;

c.    The compromise and continuing publication of their Private Information;

d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.    Delay in receipt of tax refund monies;

g.    Unauthorized use of stolen Private Information; and

h.    The continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Private Information in its possession.

72.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information

obtained.

73.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals often post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

74.    It can take victims years to spot identity or PII theft, giving criminals plenty of time to milk that information for cash.

75.    One such example of criminals using PII for profit is the development of "Fullz" packages.

76.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

77.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Class's stolen PII is being misused, and that such misuse is traceable to the Data Breach.

78.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of

complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims, and the numbers are only rising.

79.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good" Defendant did not rapidly report to Plaintiff and the Class that their PII had been stolen.

80.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

81.    In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

82.    Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and the Class will need to remain vigilant against unauthorized data use for years or even decades to come.

83.    The Federal Trade Commission ("FTC") has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[8]

---

[8] Statement of FTC Commissioner Pamela Jones Harbour-Remarks Before FTC Exploring Privacy Roundtable, (Dec. 7, 2009),

84.    The FTC has also issued Many guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires:

(1)    encrypting information stored on computer networks;

(2)    retaining payment card information only as long as necessary;

(3)    properly disposing of personal information that is no longer needed;

(4)    limiting administrative access to business systems;

(5)    using industry-tested and accepted methods for securing data;

(6)    monitoring activity on networks to uncover unapproved activity;

(7)    verifying that privacy and security features function properly;

(8)    testing for common vulnerabilities; and

(9)    updating and patching third-party software.

85.    According to the FTC, unauthorized PII disclosures ravage consumers' finances, credit history and reputation, and can take time, money and patience to resolve the fallout.[9] The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

86.    Defendant's failure to properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

///

---

http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited October 4, 2024).

[9] *See* Taking Charge, What to Do If Your Identity is Stolen, FTC, at 3 (2012), *available at* https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last visited October 4, 2024).

## V.   <u>PLAINTIFF'S AND CLASS MEMBERS' DAMAGES</u>

87.   To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Defendant has only offered 12 months of inadequate credit monitoring services, despite Plaintiff and Class Members being at risk of identity theft and fraud for the remainder of their lifetimes.

88.   The 12 months of credit monitoring offered to persons whose Private Information was compromised is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud.

89.   Defendant's credit monitoring advice to Plaintiff and Class Members places the burden on Plaintiff and Class Members, rather than on Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the Data Breach.

90.   Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

91.   Plaintiff's Private Information was compromised and exfiltrated by cyber-criminals as a direct and proximate result of the Data Breach.

92.   Plaintiff was damaged in that his Private Information is in the hands of cyber criminals.

93.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

94.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

95.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

96.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

97.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

98.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Many courts have recognized the propriety of loss of value damages in related cases.

99.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

100.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a.    Reviewing and monitoring financial and other sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b.    Purchasing credit monitoring and identity theft prevention;

c.    Placing "freezes" and "alerts" with reporting agencies;

d.    Spending time on the phone with or at financial institutions, healthcare

providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e.   Contacting financial institutions and closing or modifying financial accounts; and; and

f.   Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

101.   Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is inaccessible online and that access to such data is password protected.

102.   As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## VI.   PLAINTIFF'S AND CLASS ACTION ALLEGATIONS

103.   Plaintiffs brings this nationwide class action on behalf of himself and on behalf of others similarly situated under Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

104.   The Nationwide Class that Plaintiffs seek to represent is defined as follows:

**Nationwide Class: All persons whose Private Information was compromised because of the Data Breach that occurred on, or around, February 5, 2024 (the "Class").**

**California Subclass: All individuals and entities residing or have resided in California whose Private Information was**

**compromised in the Data Breach on, or around, February 5, 2024.**

105. Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

106. Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having an opportunity to conduct discovery.

107. Numerosity, Fed R. Civ. P. 23(a)(l): Class Members are numerous that joinder of all of them in a single proceeding is impracticable. The exact number of Class Members is unknown to Plaintiff now, but Defendant reported over 96,000 members to the Maine Attorney General.[10]

108. Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.    Whether Defendant's data security systems prior to and during the

---

[10] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/5199a89f-3500-4f2c-8883-2d01de4bc78c.html (last viewed October 31, 2024).

Data Breach adhered to industry standards;

e.    Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f.    Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g.    Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.    Whether Plaintiff and Class Members suffered legally cognizable damages from Defendant's misconduct;

i.    Whether Defendant failed to provide notice of the Data Breach promptly; and

j.    Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

109.   Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, among other things, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and no defenses are unique to Plaintiff. Plaintiff's claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

110.   Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged here apply to and affect Class Members

uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct toward the Class as a whole, not on facts or law applicable only to Plaintiffs.

111. <u>Adequacy,</u> Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

112. <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

113. <u>Superiority and Manageability,</u> Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged here; it will permit many Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the

courts.

114.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

115.  Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

116.  Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## VII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### NEGLIGENCE

**(On Behalf of Plaintiff and All Class Members)**

117.  Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

118.  As a condition of receiving services from Defendant, Defendant's current and former clients were obligated to provide Defendant with their Private Information.

119.  Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would use reasonable measures to protect their Private Information and only make disclosures to third parties that are authorized.

120.  Defendant has full knowledge of the sensitivity of the Private

Information and the types of harm that Plaintiff and the Class could and would suffer Private Information were wrongfully disclosed.

121.  Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

122.  Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the Private Information of Plaintiff and the Class in Defendant's possession was adequately secured and protected.

123.  Defendant also had a duty to exercise appropriate clearinghouse practices to remove former customers' Private Information that Defendant was no longer required to retain pursuant to regulations or legitimate business purposes.

124.  Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiff and the Class.

125.  Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant on the one hand and Plaintiff and the Class on the other. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of receiving services from Defendant. The special relationship also arose as a result of the nature of the relationship between Defendant and its clients.

126.  Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

127.  A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of

Defendant's inadequate security practices.

128.  Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that information, and the necessity for encrypting or redacting Private Information stored on Defendant's systems.

129.  Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions to not comply with industry standards for the safekeeping of the Private Information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

130.  Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

131.  Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

132.  Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

133.  Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and the Class.

134.  Defendant has admitted that the Private Information of Plaintiff and the Class was accessed, exfiltrated, and published on the internet by cyber criminals.

135.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and the Class during the time the Private Information was within Defendant's possession or control.

136.    Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

137.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiff and the Class in the face of increased risk of theft.

138.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former patients' Private Information.

139.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

140.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the present harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and

141.    Defendant's violation of California and federal statutes also constitute

negligence *per se*. Specifically, as described herein, Defendant has violated California's data breach statute, Cal. *Civ. Code* § 1798.81.5, which requires Defendant to undertake reasonable measures to safeguard the Private Information of Plaintiff and the Class.

142. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (viii) costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

143. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

144. Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and Class Members have suffered and

will suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

145. Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

## SECOND CAUSE OF ACTION

### INVASION OF PRIVACY

### (On Behalf of Plaintiff and All Class Members)

146. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

147. Plaintiff and the Nationwide Class had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

148. Defendant owed a duty to its current and former clients, including Plaintiff and the Nationwide Class, to keep their PII contained as a part thereof, confidential.

149. Defendant failed to protect and actually or potentially released to unknown and unauthorized third parties the PII of Plaintiff and the Nationwide Class.

150. Defendant allowed unauthorized and unknown third parties to actually or potentially access and examine the PII of Plaintiff and the Nationwide Class, by way of Defendant's failure to protect the PII. The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiff and the Nationwide Class is highly offensive to a reasonable person.

151. The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and the Nationwide Class disclosed their PII to

Defendant as part of Plaintiff's and the Nationwide Class's relationships with Defendant, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure.

152.   Plaintiff and the Nationwide Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

153.   The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiff and the Nationwide Class's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person. Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

154.   Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and the Nationwide Class.

155.   Moreover, as a result of the Data Breach, Plaintiff's Private Information is a private fact as a result of the Data Breach, Defendant publicly disclosed Plaintiff's and Class Members' private facts.

156.   Plaintiff and Class Members' Private Information constitutes a private fact.

157.   As a result of the Data Breach, Defendant publicly disclosed Plaintiff's and Class Members' Private Facts.

158.   Defendant's public disclosure of Plaintiff's and Class Members' Private Facts was offensive and objectionable to the reasonable person and is not of a legitimate public concern.

159.   As a proximate result of the above acts and omissions of Defendant, the PII of Plaintiff and the Nationwide Class was accessed by third parties without

1    authorization, causing Plaintiff and the Nationwide Class to suffer damages.

2    160.   Unless and until enjoined, and restrained by order of this Court,

3    Defendant's wrongful conduct will continue to cause great and irreparable injury

4    to Plaintiff and the Nationwide Class in that the PII maintained by Defendant can

5    be viewed, distributed, and used by unauthorized persons for years to come.

6    Plaintiff and the Nationwide Class have no adequate remedy at law for the injuries

7    in that a judgment for monetary damages will not end the invasion of privacy for

8    Plaintiff and the Nationwide Class.

9    ### THIRD CAUSE OF ACTION

10   **UNJUST ENRICHMENT**

11   **(On Behalf of Plaintiff and All Class Members)**

12   161.   Plaintiff brings this claim individually and on behalf of all Class

13   Members.

14   162.   Defendant benefited from receiving Plaintiff and Class Members'

15   Private Information by its ability to retain and use that information for its own

16   benefit. Defendant understood this benefit.

17   163.   Defendant also understood and appreciated that Plaintiff's and Class

18   Members' Private Information was private and confidential, and its value depended

19   upon Defendant maintaining the privacy and confidentiality of that information.

20   164.   Plaintiff and Class Members conferred a monetary benefit upon

21   Defendant in the form of providing their Private Information to Defendant. In

22   connection thereto, Plaintiff and Class Members provided Private Information to

23   Defendant with the understanding that Defendant would pay for the administrative

24   costs of reasonable data privacy and security practices and procedures. Specifically,

25   Plaintiff and Class Members were required to provide their Private Information. In

26   exchange, Plaintiff and Class Members should have received adequate protection

27   and data security for such Private Information held by Defendant.

28   165.   Defendant knew Plaintiff and Class Members conferred a benefit

which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

166.     Defendant failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members.

167.     Under the principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

168.     Defendant wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class Members.

169.     Plaintiff and Class Members have no adequate remedy at law.

170.     Defendant's enrichment at the expense of Plaintiff and Class Members is and was unjust.

171.     As a result of Defendant's wrongful conduct, as alleged above, Plaintiff and the Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

## FOURTH CAUSE OF ACTION

### BREACH OF IMPLIED CONTRACT

### (On Behalf of Plaintiff and All Class Members)

172.     Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

173.     Plaintiff and the Class Members delivered their Private Information to Defendant as part of the process of obtaining services provided by Defendant.

174.     Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual

relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff and Class privacy and protection attendant to entrusting such data to Defendant.

175.   In providing their Private Information, Plaintiff and Class Members entered into an implied contract with Defendant whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' Private Information.

176.   In delivering their Private Information to Defendant, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard that data.

177.   Plaintiff and the Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

178.   Defendant accepted possession of Plaintiff's and Class Members' personal data for the purpose of providing medical services to Plaintiff and Class Members.

179.   Had Defendant disclosed to Plaintiff and Class Members that Defendant did not have adequate computer systems and security practices to secure their Private Information, Plaintiff and Class Members would not have provided their Private Information to Defendant.

180.   Defendant recognized that its current and former client's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

181.   Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

182.   Defendant breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard their data.

183.   Defendant breached the implied contract with Plaintiff and Class

Members by failing to promptly notify them of the access to and exfiltration of their Private Information.

184.    As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' Private Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Private Information; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their Private Information; and (h) the continued and substantial risk to Plaintiff and Class Members' Private Information, which remains in the Defendant's possession with inadequate measures to protect Plaintiff's and Class Members' Private Information.

185.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ* ("UCL")**

**(On Behalf of Plaintiff and All Class Members, or Alternatively, the California Subclass)**

186.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

187.    Defendant is a "person" defined by Cal. Bus. & Prof. Code. §17201.

188.    Defendant violated Cal. Bus. & Prof. Code. §17200 et seq. (UCL) by

engaging in unlawful, unfair and deceptive acts and practices.

189.   Defendant stored Plaintiff and Class Members' Private Information in its electronic and consumer information databases. Defendant represented to Plaintiff and Class Members that their Private Information was secure, and that Plaintiff and the Class Members' Private Information would remain private. Defendant engaged in unfair acts and business practices by representing that it had secure computer systems when it did not.

190.   Even without these misrepresentations, Plaintiff and the Class Members were entitled to, and did, assume Defendant would take appropriate measures to keep their Private Information safe. Defendant did not disclose at any time that Plaintiff and Class Members' Private Information was vulnerable to hackers because Defendant's data security measures were inadequate and outdated, and Defendant was the only entity in possession of that material information, which it had a duty to disclose.

191.   Defendant knew or should have known it did not employ reasonable measures that would have kept Plaintiff and the Class Members' Private Information secure and prevented the loss or misuse of Plaintiff and the Class Members' Private Information.

192.   Defendant violated the UCL by misrepresenting, both by affirmative conduct and by omission, the security of its systems and services, and its ability to safely store Plaintiff and the Class Members' Private Information. Defendant also violated the UCL by failing to implement and maintain reasonable security procedures and practices appropriate to protect Private Information, and by failing to immediately notify Plaintiff and the Class Members of the Data Breach.

193.   Defendant also violated its commitment to maintain the confidentiality and security of Plaintiff's and the Class Members' Private Information and failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security.

1    194. **Defendant engaged in unfair business practices under the**
2    **"balancing test."** The harm caused by Defendant's actions and omissions, as
3    described in detail above, greatly outweigh any perceived utility. Indeed,
4    Defendant's failure to follow basic data security protocols and misrepresentations
5    to Plaintiff and Class Members about Defendant's data security cannot be said to
6    have had any utility at all. All these actions and omissions were clearly injurious to
7    Plaintiff and the Class Members, directly causing the harms alleged below.

8    195. **Defendant engaged in unfair business practices under the**
9    **"tethering test."** Defendant's actions and omissions, as described in detail above,
10   violated fundamental public policies expressed by the California Legislature. *See,*
11   *e.g.,* Cal. Civ. Code § 1798.1 ("The Legislature declares that ... all individuals have
12   a right of privacy in information pertaining to them.... The increasing use of
13   computers ... has greatly magnified the potential risk to individual privacy that can
14   occur from the maintenance of personal information."); Cal. Civ. Code §
15   1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information
16   about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is
17   the intent of the Legislature that this chapter [including the Online Privacy
18   Protection Act] is a matter of statewide concern.") Defendant's acts and omissions,
19   and the injuries caused by them, are thus "comparable to or the same as a violation
20   of the law …" *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*
21   *Co.* (1999) 20 Cal. 4th 163, 187.

22   196. **Defendant engaged in unfair business practices under the "FTC**
23   **test."** The harm caused by Defendant's actions and omissions, as described in detail
24   above, is substantial in that it affects tens of thousands of Class Members and has
25   caused those persons to suffer actual harms. Such harms include a substantial risk
26   of identity theft, disclosure of Plaintiff's and the Class Members' Private
27   Information to third parties without their consent, diminution in value of their
28   Customer Data, consequential out of pocket losses for procuring credit freeze or

protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures. This harm continues given the fact that Plaintiffs' and the Class Members' Private Information remains in Defendant's possession, without adequate protection, and is also in the hands of those who obtained it without their consent. Defendant's actions and omissions violated, *inter alia*, Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45. *See, e.g., F.T.C. v. Wyndham Worldwide Corp.,* 10 F. Supp. 3d 602, 613 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3d Cir. 2015); *In re LabMD, Inc.*, FTC Docket No. 9357, FTC File No. 102-3099 (July 28, 2016) (failure to employ reasonable and appropriate measures to secure personal information collected violated § 5(a) of FTC Act); *In re BJ's Wholesale Club, Inc.*, -4148, FTC File No. 042-3160 (Sept. 20, 2005) (same); *In re CardSystems Solutions, Inc.*, FTC Docket No. C-4168, FTC File No. 052-3148 (Sept. 5, 2006) (same); *see also United States v. ChoicePoint, Inc.*, Civil Action No. 1:06-cv-0198-JTC (N.D. Ga. Oct. 14, 2009) ("failure to establish and implement, and thereafter maintain, a comprehensive information security program that is reasonably designed to protect the security. confidentiality, and integrity of personal information collected from or about consumers" violates § 5(a) of FTC Act); 15 U.S.C. § 45(n) (defining "unfair acts or practices" as those that "cause[ ] or[are] likely to cause substantial injury to consumers which [are] not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.").

197.   Plaintiff and the Class Members suffered injury in fact and lost money or property as the result of Defendant's unfair business practices. In particular, Plaintiff and the Class Members have suffered from improper or fraudulent charges to their credit/debit card accounts; and other similar harm, all as a result of the Data Breach. In addition, their Private Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value. Plaintiff and the Class Members

have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

198.   Defendant's 'unfair' acts and practices further include:

- Utilizing cheaper, ineffective security measures and diverting those funds to its own profit, instead of providing a reasonable level of security that would have preventing the hacking incident;

- Failing to follow industry standard and the applicable, required and appropriate protocols, policies and/or procedures regarding the encryption of data;

- Failing to timely and adequately notify Class Members about the Data Breach and the scope of same, so that Class Members could take appropriate steps to mitigate the potential for identity theft and other damages;

- Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' PII; and

- Omitting, suppressing and concealing the material fact that Defendant did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII.

199.   Defendant has engaged in 'unlawful' business practices by violating multiple laws, including the FTC Act, 15 U.S.C. §45, Gramm-Leach-Biley Act ("GLBA"), Cal. *Civ. Code* § 1798.82, and California common law.

200.   Defendant's unlawful acts and practices include:

- Failing to implement and maintain reasonable security and privacy measures to protect it's customers PII, which was a direct and proximate cause of the Data Breach;

- Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach;
- Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act 15 U.S.C. §45 and GLBA, which was a direct and proximate cause of the Data Breach;
- Failing to comply with Cal. *Civ. Code* § 1798.82;
- Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' personal information, including by implementing and maintaining reasonable security measures; and
- Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act, Cal. *Civ. Code* § 1798.82; 15 U.S.C. §45 and GLBA.

201.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' personal information.

202.   As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members' were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, time and expenses related to monitoring financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal information.

203.   Defendant's violations were, and are, willful, deceptive, unfair and unconscionable.

204.   Defendant's poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to pay Defendant and/or its agents for financial services, Plaintiff and other reasonable consumers understood and expected that they were, in part, paying for the product and/or service and necessary data security to protect the Private Information, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

205.   Plaintiff and Class Members have lost money and property as a result of Defendant's conduct in violation of the UCL, as stated herein and above.

206.   By deceptively storing, collecting, and disclosing their personal information, Defendant has taken money or property from Plaintiff and Class Members.

207.   Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and Class Members' rights.

208.   Plaintiff and Class Members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs under Cal. *Code of Civ. Proc.* § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

## SIXTH CAUSE OF ACTION

### VIOLATION OF CAL. CIV. CODE § 1798.82(A) – CALIFORNIA SECURITY NOTIFICATION LAWS)

### (On Behalf of Plaintiff and All Class Members, or Alternatively, the California Subclass)

209.   Plaintiff re-alleges and incorporates the above allegations as if fully

1    set forth herein.

2    210. Pursuant to Cal. *Civ. Code* § 1798.82(a), "A person or business that

3    conducts business in California, and that owns or licenses computerized data that

4    includes personal information, shall disclose a breach of the security of the system

5    following discovery or notification of the breach in the security of the data to a

6    resident of California (1) whose unencrypted personal information was, or is

7    reasonably believed to have been, acquired by an unauthorized person, or, (2)

8    whose encrypted personal information was, or is reasonably believed to have been,

9    acquired by an unauthorized person and the encryption key or security credential

10   was, or is reasonably believed to have been, acquired by an unauthorized person

11   and the person or business that owns or licenses the encrypted information has a

12   reasonable belief that the encryption key or security credential could render that

13   personal information readable or usable. The disclosure shall be made in the most

14   expedient time possible and without unreasonable delay, consistent with the

15   legitimate needs of law enforcement, as provided in subdivision (c), or any

16   measures necessary to determine the scope of the breach and restore the reasonable

17   integrity of the data system." Prior to passage of such statute, the California State

18   Assembly cited an incident where authorities knew of the breach in security for 21

19   days "before state workers were told" as an example of "late notice."

20   211. Cal. *Civ. Code* § 1798.82 further provides, "(h) For purposes of this

21   section, 'personal information' means an individual's first name or first initial and

22   last name in combination with any one or more of the following data elements,

23   when either the name or the data elements are not encrypted: (1) Social security

24   number. (2) Driver's license number or California Identification Card number. (3)

25   Account number, credit or debit card number, in combination with any required

26   security code, access code, or password that would permit access to an individual's

27   financial account. (4) Medical information. (5) Health insurance information. (i) ....

28   (2) For purposes of this section.

212.   Defendant conducts business in California and owns or licenses computerized data which includes the personal information, within the meaning of Cal. *Civ. Code* § § 1798.82(h), of Plaintiff and the Class.

213.   Based upon Defendant's Notice of Data Incident Letter, Defendant was aware that Plaintiff and the Class Members unencrypted personal information was, or is reasonably believed to have been acquired by an unauthorized person no later than April 12, 2024, but did not begin to mail notification letters to Plaintiff and the Class until May 31, 2024. Thus, Defendant waited at least 49 days before *beginning* to inform Plaintiff and the Class of this incident and the subsequent threat to Plaintiff and the Class Members unencrypted personal information. As a result, Defendant did not disclose to Plaintiff and the Class Members that their unencrypted personal information was, or was reasonably believed to have been, acquired by an unauthorized person, in the most expedient time possible and without reasonable delay in violation of Cal. *Civ. Code* § 1798.82(a). Given the example of the Legislature finding that a delay of 21 days to be "late notice" under the statute, Defendant's delay of 49 days before *beginning* to inform Plaintiff and Class Members that their personal information was, or was reasonably believed to have been, acquired by an unauthorized person by mailing Defendant's Notice of Data Security Incident Letter to Plaintiff and Class Members is a presumptively unreasonable notice in violation of Cal. *Civ. Code* § 1798.82(a).

214.   Upon information and belief, Plaintiff believes and alleges that no law enforcement agency has notified Defendants that the notification would impede a criminal investigation justifying Defendant's decision to wait 49 days *before beginning to mail* notification letters to Plaintiff and Class Members *after* they knew that Plaintiff and Class Members unencrypted personal information on Defendant's network server was, or was reasonably believed to have been acquired by an unauthorized person. Upon information and belief, Plaintiff believes and alleges that there were no measures taken by Defendant to determine the scope of

the breach or to restore the reasonable integrity of the data system, which justifies Defendant's decision to wait 49 days *before beginning to mail* notification letters to Plaintiff and Class Members. Moreover, FI9's Notice of Data Security Incident Letter mailed to Plaintiff and Class *failed* to state whether notification was delayed as a result of a law enforcement investigation, in violation of Cal. *Civ. Code* § 1798.82(d)(2)(D).

215.   Plaintiff and Class Members have been injured by fact that Defendants did not disclose to them that their unencrypted personal information was, or was reasonably believed to have been, acquired by an unauthorized person in the most expedient time possible and without reasonable delay in violation of Cal. *Civ. Code* § 1798.82(a). Defendant's delays in informing required by Cal. *Civ. Code* § 1798.82(a) and providing all of the information required by Cal. *Civ. Code* § 1798.82(d) to Plaintiff and Class Members that their unencrypted personal information was, or was reasonably believed to have been, acquired by an unauthorized person, have prevented Plaintiff and Class Members from taking steps in the most expedient time possible to protect their unencrypted personal information from unauthorized use and/or identify theft.

216.  As a direct and proximate result of Defendant's and/or its employees' above -described conduct in violation of Cal. *Civ. Code* § § 1798.82(a), Plaintiff and Class Members seek damages suffered, according to proof, pursuant to Cal. *Civ. Code* § 1798.84(b), and injunctive relief pursuant to Cal. *Civ. Code* § 1798.84(e), from the Defendant.

///
///
///
///
///
///

1

2                        **<u>PRAYER FOR RELIEF</u>**

3        WHEREFORE, Plaintiff on behalf of himself and the Class described above

4    seeks the following relief:

5            1.  For an Order certifying the Class, and appointing Plaintiff and her

6                Counsel to represent the Class;

7            2.  For special damages according to proof;

8            3.  For equitable relief enjoining Defendant from engaging in the

9                wrongful conduct complained of herein relating to the misuse

10               and/or disclosure of Plaintiff's and Class Members' Private

11               Information, and from refusing to issue prompt, complete and

12               accurate disclosures to Plaintiff and Class Members;

13           4.  For equitable relief compelling Defendant to use appropriate

14               methods and policies related to consumer data collection, storage,

15               and safety, and to disclose with specificity the type of Private

16               Information compromised during the Data Breach;

17           5.  For equitable relief requiring restitution and disgorgement of the

18               revenues wrongfully retained because of Defendant's wrongful

19               conduct;

20           6.  For an Order directing Defendant to pay for not less than ten

21               years of credit monitoring services for Plaintiff and the Class;

22           7.  For an award of actual damages, compensatory damages,

23               statutory damages, and statutory penalties, in an amount to be

24               determined, as allowable by law;

25           8.  For an award of punitive damages, as allowable by law;

26           9.  For an award of attorneys' fees and costs, and any other expense,

27               including expert witness fees;

28



10. Pre-judgment and post-judgment interest on any amounts awarded; and

11. Any other relief that this court may deem just and proper.

Dated: October 31, 2024                    **KRISTENSEN LAW GROUP & EKSM, LLP**

_/s/ John P. Kristensen_

John P. Kristensen
Leigh S. Montgomery

**_Attorneys for Plaintiff_**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all such triable claims.

Dated: October 31, 2024

**KRISTENSEN LAW GROUP & EKSM, LLP**

*/s/ John P. Kristensen*

John P. Kristensen
Leigh S. Montgomery

***Attorneys for Plaintiff***

# EXHIBIT A

 

**form i-9**
COMPLIANCE
simplify | verify | comply

October 11, 2024

MYRIAM HERNANDEZ

ılıılılılıılıılıılıılıılılıılıılılıılıılıılıılıılıılı

## Notice of Security Incident

Dear Myriam:

We are writing to let you know of a cybersecurity incident that occurred at Form I-9 Compliance ("Form I-9") that affected some of your personal information. As you may be aware, our services assist our customers in completing government required Form I-9 documents.

We are providing you with information about the incident, our response, and additional measures you can take to help protect yourself. Importantly, we are not aware of fraud or misuse of your personal information resulting from this incident.

### What Happened?

On or about February 5, 2024, an unauthorized third party obtained access to a portion of Form I-9's network. On April 12, 2024, we became aware of the unauthorized activity and promptly took a portion of our network offline, activated our response process, and launched an investigation of the incident with the support of external cybersecurity experts. We also reported the incident to law enforcement.

### What Information Was Involved?

Our investigation determined that some of your personal information was affected by this incident. This information included your name, date of birth, and Social Security number.

### What We Are Doing.

As part of our response, we have worked with external cybersecurity experts to confirm the unauthorized third party no longer has access to our company systems. We have also reset all account credentials associated with the affected portion of our network, and we have implemented additional security measures with the guidance of external experts to strengthen the ongoing security of our network.

While we are not aware of identity theft or fraud related to information affected by this incident, as an additional precaution, we are offering you two years of complimentary credit monitoring and identity restoration services through Experian. Details about this offer and instructions on how to activate these services are enclosed with this letter. You must enroll by January 31, 2025 to use these services.

### What You Can Do.

We encourage you to remain vigilant and review your account statements and free credit reports regularly to ensure there is no unauthorized or unexplained activity. We also encourage you to enroll in the complimentary credit monitoring services that we are offering. Please review the enclosed *Steps You Can Take to Help Protect Personal Information*, which contains details about this offer and general guidance on what you can do to safeguard against possible future misuse of your information.

ELN-22975